UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17-CR-0043 RWS/PLC |
| | ) |
| TERRANCE LONG, JR., | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation

This matter is before the Court following a hearing on Defendant Terrance Long, Jr.'s Motion to Suppress Evidence and Statements. The Government charged Defendant with a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). Defendant filed a motion to suppress on two grounds: (1) Defendant did not have authority to consent to a search of the residence where police officers seized the firearm; and (2) Defendant's statements "were made without benefit of Miranda warnings." The Government attached a copy of the police report to its Response to the Motion to Suppress Evidence and Statements. Sergeant Michael Scego of the St. Louis Metropolitan Police Department, one of the officers present at the time of Defendant's statements and the search of Defendant's residence, testified at the hearing. Based upon the evidence adduced at the hearing, as well as the written and oral arguments of the parties, the Court recommends the denial of Defendant's motion.[1]

## Findings of Fact

Sergeant Scego testified that he responded to 4548 Carter, a single family residence, in the City of St. Louis. Two police officers, Michael Growe and Nadja Curt, were at the address

---

[1] This matter is before the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. Section 636(b).

when Sergeant Scego arrived. The two officers were at the address because of a 911 call regarding a "flourishing" - - "that a subject had pulled a handgun on his live-in girlfriend."

Following his arrival at the residence, Sergeant Scego spoke with the mother of "the subject's" girlfriend. The mother stated that earlier that day, "the subject," identified as Defendant. was physically abusive and had a pistol. Following the conversation with the mother, Sergeant Scego, Officer Growe and one other officer went to the backyard of the residence. Sergeant Scego spotted Defendant in the backyard and asked to speak to him. Defendant voluntarily approached the officers and was patted down.

Defendant voluntarily walked with the officers to the front of the residence. Standing in front of the residence, Officer Growe asked Defendant what happened. According to Sergeant Scego, Defendant stated that "he was involved in an argument with his girlfriend over personal matters." At that point, Sergeant Scego testified, Officer Growe "kind of like stopped [Defendant] from talking for a second and then read him his rights."

Following recitation of <u>Miranda</u> rights, Officer Growe asked Defendant if he understood his rights. Defendant replied that he did and then stated "let's clear this up." Officer Growe then questioned Defendant further about the incident. Defendant stated that he and his girlfriend had argued all week and that she threatened him with mace. Defendant admitted that he tried to protect himself. At that point, Officer Growe asked Defendant if he had been convicted and he said that he was on parole "for a gun." Officer Growe then inquired whether Defendant had a silver and black pistol and Defendant answered, "fuck it, yeah, it's under my mattress, go get it."

At the time Defendant told police officers to retrieve his firearm, there were two police officers with him, Sargent Scego and Officer Growe. Defendant was not in handcuffs when he described his gun's location and gave permission to seize it.

2

Following Defendant's statements, Officer Growe, Sergeant Scego and another officer, returned to Defendant's residence and entered through an open back door. Officer Growe went into a bedroom and "obtained the firearm." The officers did not further search or seize anything from the residence. After exiting the residence, the officers returned to Defendant, placed him under arrest and again read him his Miranda rights. Officers conveyed Defendant to the North Patrol Division. At the station, Officer Growe offered Defendant an opportunity to make a written statement. He declined to do so.

## Conclusions of Law

A. Statements

Defendant moves to suppress his statements "because they were elicited in violation of Miranda when they were [the] product of a deliberate question first technique." The Government counters that: (1) Defendant was not in custody at the time of his statements; and (2) was not subject to a "two-stage interrogation."[2]

Police officers are required to inform a suspect of Miranda rights when a suspect is in custody and subject to interrogation. Illinois v. Perkins, 486 U.S. 292, 297 (1990). Miranda warnings are not required for general "on the scene" questioning about the facts of a crime. United States v. Klein, 13 F.3d 1182, 1184 (8th Cir. 1994) (internal quotation marks omitted) (quoting Miranda v. Arizona, 384 U.S. 436, 477-78 (1966)).

In United States v. Griffin, 922 F.2d 1343 (8th Cir. 1990), the Eighth Circuit concluded that "[c]ustody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." Id. at 1347 (emphasis in

---

[2] In his arguments at the hearing, and in his post-hearing brief, Defendant abandoned the position (articulated in his written motion) that he lacked authority to consent to search of the residence he shared with his girlfriend.

3

original). Custody determinations are "mixed questions of law and fact which require that the entire circumstances of the particular case be carefully assessed." Id. In assessing custody, the Griffin court articulated six indicia, but described the list as "non-exhaustive":

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Id. at 1349. An officer accompanying a defendant as he moves about outside his residence does not in itself demonstrate the defendant is in custody. See United States v. Giboney, No. 16-3294, 2017 WL 3096336, at *4 (8th Cir. July 21, 2017).

Applying the Griffin factors to circumstances here, it is clear that Defendant was not in custody. Defendant voluntarily spoke to Sergeant Scego in the backyard and accompanied Sergeant Scego and Officer Growe to the front of his residence. While standing in front of his residence, Defendant responded voluntarily to the officers' questions. Although the officers did not explicitly advise Defendant either that he was free to leave or his participation in the conversation was voluntary, nothing about the circumstances or officers' conduct demonstrated Defendant was unable to leave or stop the questioning. During the brief initial questioning, Defendant was not handcuffed or otherwise physically restrained, and the officers did not employ "strong arm tactics" or "deceptive stratagems." Additionally, the officers did not place Defendant under arrest at the termination of the initial brief questioning. Instead, the officers placed Defendant under arrest only after the officers advised him of his Miranda rights, he disclosed the location of the firearm, and the police officers entered the residence and seized the

firearm from the location described by Defendant.

Defendant also contends that the police officers violated principles articulated in Missouri v. Seibert, 542 U.S. 600 (2004) by eliciting incriminating information, Mirandizing him, and then re-eliciting the incriminating material. The record here does not support Defendant's position. As an initial matter, Defendant was not in custody when he made the statement that he and his girlfriend had argued. The officers were not required to Mirandize him at that point. Immediately following, Defendant's initial statement, Officer Growe Mirandized him. It was only after receiving his Miranda warning that Defendant stated that he possessed a firearm and described where, in the residence, it was located.

Defendant's reliance on United States v. Ollie, 442 F.3d 1135 (8th Cir. 2006) is misplaced. First, unlike the defendant in Ollie, Defendant was not in custody at the time he initially spoke to the police officers. Second, Defendant's incriminating statement occurred following Miranda warnings. The Ollie defendant gave a confession, was Mirandized and then provided a written statement. Here, Defendant first stated he had an argument with his girlfriend. This was not an incriminating statement. Defendant only revealed the weapon's location and gave consent to the search after the officers provided him with Miranda warnings. Accordingly, there is no basis to suppress Defendant's statements.

B. Evidence

Defendant contends that because he did not consent to the warrantless search, the firearm should be suppressed. The Government contends that Defendant's consent to search was voluntary.

Under the Fourth Amendment, generally, warrantless searches are presumptively unreasonable. United States v. Castaneda, 438 F.3d 891, 893 (8th Cir. 2006) (internal quotation

5

marks omitted) (quoting Horton v. California, 496 U.S. 128, 133 (1990)). "[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" Minnesota v. Dickerson, 508 U.S. 366, 372, (1993) (quoting Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984) (per curiam)). "A defendant's voluntary consent to be searched is an exception to the Fourth Amendment's warrant requirement." United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). Additionally, law enforcement may conduct a warrantless search of premises "without running afoul of the Fourth Amendment," when a person having authority over the premises voluntarily consents to the search, through behavior or otherwise. United States v. Williams, 346 F.3d 796, 798-99 (8th Cir. 2003).

Consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," rather than "the product of duress or coercion, express or implied." Schneckloth, 412 U.S. at 225, 227, 248. "Whether an individual's consent is voluntary is a question of fact that must be determined from the totality of the circumstances." United States v. Arciniega, 569 F.3d 394, 398 (8th Cir. 2009). "The Government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual." Esquivias, 416 F.3d at 700. When evaluating the voluntariness of consent, a number of factors are relevant, including: (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of his Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. Id. (citations omitted). Courts also consider the

6

environment in which an individual's consent is obtained, including: (1) the length of the detention; (2) whether the police use threats, physical intimidation or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search. Id.

Defendant argues that his consent was involuntary because he was in custody and in a police-dominated environment. More specifically, Defendant claims his "consent was given as a result of improper police conduct." There is no evidence in the record to support Defendant's assertion. Defendant was not handcuffed, and was standing outside his residence while he was questioned. His interactions with police officers were relatively brief. He does not claim that he was verbally or physically abused or threatened. Only one of the several officers on the scene questioned Defendant. In short, the totality of the circumstances compels the conclusion that Defendant's statements to the police regarding the location of the firearm and his consent to search were voluntary.

**ACCORDINGLY**,

**IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress evidence and statements [Doc. 27] be **DENIED**. The parties are advised that they have **fourteen (14) days** in which to file written objections to this Recommendation pursuant to 28 U.S.C. Section 636(b)(1). Failure to file timely objections may result in waiver of the right to appeal questions of fact.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of August, 2017